795 A.2d 275 (2002)
350 N.J. Super. 300
Thomas and Suzanne BRACKEN, Plaintiffs-Appellants,
v.
PRINCETON ESTATES, INC., Defendants, and
Bureau of Homeowner Protection, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 2002.
Decided April 19, 2002.
William S. Greenberg, Newark, argued the cause for appellants (McCarter & English, attorneys; Mr. Greenberg, of counsel; J. Forrest Jones and Laura A. Leacy, on the brief).
Daniel P. Reynolds, argued the cause for respondent Bureau of Homeowner Protection (David Samson, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Mr. Reynolds, Senior Deputy Attorney General, on the brief).
Before Judges BAIME, NEWMAN and FALL.
The opinion of the court was delivered by *276 BAIME, P.J.A.D.
Suzanne and Thomas Bracken appeal from a decision of the Commissioner of the Department of Community Affairs denying their claim for a defective roof under the New Home Warranty Security Program. This is the second time this case has come before us. In our earlier unreported opinion, we remanded the matter to the Commissioner for clarification of the grounds upon which she denied the Brackens' claim and for further development and exploration of the issues presented. In her final decision on remand, the Commissioner concluded: (1) the Brackens' claim was made prior to settlement and receipt of the certificate of occupancy from the builder and was thus not cognizable under the New Home Warranty Security Program, and (2) the Brackens' claim was submitted to an arbitrator and was therefore barred by the statutory election of remedies provision. We affirm the Commissioner's decision.

I.
On March 25, 1993, the Brackens entered into a contract with Princeton Estates, Inc. for construction of a new home in Montgomery Township. Pursuant to the agreement, the Brackens paid Princeton an initial deposit which was followed by a series of progress payments upon the completion of various portions of the project. By fall of 1994, the Brackens had paid all but approximately $20,000 of the purchase price.
In March 1994, while construction was still in progress, a snowstorm alerted the Brackens that the recently installed roof leaked significantly. As a result, on July 11, 1994, the Brackens wrote a letter to Princeton informing it of the defect as well as other construction-related issues. Upon completion of the construction, Princeton obtained a certificate of occupancy from the municipality, but refused to provide the Brackens with a copy, because the Brackens failed to attend the scheduled settlement and declined to make the final payment. Notwithstanding Princeton's alleged failure to correct the defects, the Brackens obtained a copy of the certificate of occupancy from the municipality and moved into the house on August 26,1994.
On September 26, 1994, the Brackens placed $20,000, representing the unpaid balance due on the contract, into an escrow account to be administered by their attorney "as payment for items needed to be done to complete our new home." Thereafter, the Brackens notified Princeton, by letter dated October 9, 1994, that they intended to file a new home warranty claim with the Bureau of Homeowner Protection if the reported defects were not corrected immediately. When Princeton failed to respond to their letter, the Brackens, on October 22, 1994, filed a notice of claim under the New Home Warranty Program, specifically alleging roof defects and warping exterior doors.
On October 26, 1994, the Bureau wrote to Princeton regarding the Brackens' complaints and requested a written explanation. Princeton responded on November 2, 1994. In its letter, Princeton informed the Bureau that, after it had substantially completed the house and had obtained a certificate of occupancy, the Brackens refused to attend the settlement. Princeton also noted that it had applied for arbitration with the American Arbitration Association (AAA) to resolve the areas of disagreement with the Brackens. Princeton contended that the warranty was not in effect until the dispute was resolved, and the original certificate of occupancy was given to the Brackens.
*277 On November 10, 1994, the Bureau wrote to the Brackens informing them that "[u]ntil the dispute is resolved regarding settlement of the home, [it] [could not] proceed with [their] [notice of claim]." The Bureau followed this letter with correspondence dated December 19,1994, which explicated on its reasons for concluding that the Brackens' claim was not ripe for resolution. In its December 19 letter, the Bureau explained:
It is apparent from both your letters and the builder's letter that the contract that you entered into is not settled. The New Home Warranty Program is not authorized by law to adjudicate contractual disputes.
For the purposes of determining when a builder incurs the obligation to provide a warranty, we look to the point in time when he delivers a Certificate of Occupancy. Both you and the builder confirm that the builder did not deliver a Certificate of Occupancy, but that nevertheless you took up residency.
I note that your contractual dispute is the subject of a pending arbitration hearing pursuant to the terms of your contract. I trust that the matter will be resolved through this process. At that time we will evaluate whether there continues to be an obligation on the part of the builder to supply a warranty.
Thereafter, the Brackens submitted a counterclaim in the arbitration proceedings with Princeton. They asserted in pertinent part:
[Princeton] has been paid over 95% of our contracted amount to build our home. We placed in escrow $20,000 on 9/26/94 to cover the balance due on our contract which is $19,654. [Princeton] has not completed all contract work and has not corrected many construction defects and deficiencies. Several are of major significance as evidenced by a defective roof (in need of replacement due to major leakage problems); ineffective windows which do not close (our Marvin warranty has been voided) and defective doors. In addition to the three mentioned above, there is a sizable list of other work needing to be completed and corrected.
[Princeton] has blocked our access to the Homeowner's Warranty Program as a course of action and this has left us in a precarious and dangerous position with bad weather approaching. [Princeton] has taken no action to correct the list of defects and unfinished items for several months and has threatened subcontractors, who worked on our house, and, therefore, blocked them from doing any work. All of these subcontractors should have been paid in full unless [Princeton] has violated our contract. I say this because the balance due under our contract, that is held in escrow, is [Princeton's] profit, by [its] own admission.
In the early part of 1993, [Princeton] begged us to give [it] our home to build as [it] wanted to "get back on [its] feet." Unfortunately we believed [its] promises and assurances which [it] has subsequently forgotten and disregarded.
We are seeking through this counterclaim the home for which we have contracted and substantially paid, and all of the protection the laws of New Jersey provide to homeowners (i.e. Homeowner's Warranty). Due to past actions, we do not want [Princeton] involved with the completion or correction of our home. We request all work be finished and corrected in a quality manner within our original contract amount which has a balance due of $13,901.
The arbitrator rendered his decision on June 17, 1996, granting Princeton's claim in the amount of $27,219 and also partially *278 granting the Brackens' counterclaim in the amount of $20,647. The arbitrator did not, however, delineate which claims were approved and which claims were denied. The Brackens were ordered to pay Princeton the net amount of $6,572. Princeton was directed to provide the Brackens with the original certificate of occupancy and all documents related to the New Homeowner's Warranty program. The arbitrator expressly represented that the award covered all claims and counterclaims submitted by the parties. More specifically, the arbitrator wrote that "[t]his [a]ward is in full settlement of all claims and counterclaims submitted [in] this arbitration."
After receiving the arbitration decision, the Bureau notified the Brackens, by letter dated June 25, 1996, that they could file a claim for disposition of the remaining allegations of defects under the program. The Bureau further advised the Brackens that any defects included in claims presented to the arbitrator could not be the subject of a New Home Warranty petition. Since warranty coverage was not available to the Brackens from the date of occupancy in August 1994 to the receipt of the New Home Warranty Certificate of Participation, however, the Bureau gave the Brackens fourteen days from the date of delivery of the warranty information to notify Princeton of any remaining defect in the home. Princeton was given thirty days to either correct the defects or advise the Brackens of its intention not to correct any of the problems. Following the thirtyday period, the Brackens were to have an additional two weeks to request dispute resolution through the New Home Warranty program.
On July 8, 1996, the Brackens submitted to Princeton a list of thirty-four defects, including the roof. On August 20, 1996, the Brackens filed a notice of claim with the Bureau. On September 5, 1996, the Bureau referred the matter for dispute resolution. Notwithstanding the referral, the Brackens elected to have the Bureau resolve the dispute.
On January 14, 1997, the Bureau conducted a hearing regarding alleged defects. Both the Brackens and Princeton were represented by counsel. In a decision rendered on February 7, 1997, the Bureau essentially denied all of the Brackens' claims. We recite relevant portions of the Bureau's decision:
On July 8, 1996 after receiving the Certificate of Participation, and in response to [the Bureau's] June 25, 1996 letter, the homeowners filed a list of 34 defects to be settled through the New Home Warranty Program. As directed in [the Bureau's] letter, any items of claim filed at this time were not to be in any count, exhibit or report previously presented to the arbitrator, per N.J.A.C. 5:25-3.10 and N.J.A.C. 5:25-5.5(a), Election of Remedy.
Furthermore, in this matter, any items which were known prior to the arbitration, by evidence of discussion, testimony, letters, lists, inspection reports, etc., may not be included in this claim through the New Home Warranty Program, Spolitback v. CYR Corporation, A5505-94T1[, 295 N.J.Super. 264, 684 A.2d 1021] (Appellate Division 11-26-96) New Home Warranty Election of Remedy.
The Brackens immediately appealed the denial of their claims. The matter was referred to the Office of Administrative Law as a contested case. The parties filed cross-motions for summary disposition.
On March 2, 1999, the Administrative Law Judge ("ALJ") rendered a decision granting the Bureau's motion, finding that the Brackens had elected arbitration as the exclusive remedy pursuant to N.J.S.A. 46:3B-9 by filing a counterclaim seeking *279 compensation for the defective roof. The ALJ wrote:
Though the New Home Warranty Program was established to protect new homeowners, it was also enacted to insure some accountability on the part of new home builders. The act which implies that a homeowner knowing of construction defects in their new home can recover against the New Home Warranty Program, if the defects were known before the program warranty took effect and if some authority has decided in favor of the builder as to the alleged defects. In this case, the [Brackens] were aware of alleged defects at least four months before they took possession of the property. The [Brackens] were also aware that the builder was disputing these alleged defects. The [Brackens] took possession and elected not to pay the builder what was owed him, keeping back a portion to either encourage the builder to make the requested repairs or to pay someone else to make the repairs. The builder pursuant to the contract filed for arbitration. It would appear that all the builder was seeking was what was due under the contract. It was the [Brackens] [who] raised the question and determination of the alleged defects, including the roof. The undersigned does not know why or how the arbitrator came to his decision. However, [the] arbitrator ... concluded that "this award is in full settlement of all claims and counterclaims submitted to this arbitration."
The Brackens have been making elections through the entire history of this claim. Even being aware of the roof problem and 130 other alleged defects, they decided to take possession of the property. Rather than go through settlement and obtain a certificate of participation in the New Home Warranty Program, they elected to withhold $27,000, due to the builder under the contract. In effect, they elected to withhold this amount of money to guarantee repairs and completion of the contract. When the builder filed for arbitration, the Brackens elected not to pay the $27,000, but decided to file a substantial counterclaim. There is nothing in the letter from the Bureau indicating that the Brackens were directed to do this. Though the Brackens are not satisfied with how the arbitrator handled the arbitration, he had the authority and he could have granted their counterclaim. Unfortunately, he did not rule in favor of the [Brackens]. One can only assume that the arbitrator did not award the counterclaim because it was not proven. More importantly, the builder now has a ruling in its favor ending any further responsibility on its part for the alleged defects.
The Brackens filed exceptions to the ALJ's decision. On April 13, 1999, the Commissioner adopted the ALJ's conclusion that the Brackens' defective roof claim was not cognizable under the warranty program. However, the Commissioner based her decision solely on the ground that the Brackens' claim involved the "failure of the builder to complete the new home," and that "incompletions are not compensable under the new home warranty." The Commissioner added that the arbitration proceeding addressed "incompleted" items under the contract and not defects in construction. To that extent, the Commissioner rejected the election of remedies as a basis for denying the Brackens' claim.
The Brackens appealed. Perplexed by the Commissioner's distinction between "incompletions," not cognizable under warranty program, and "defects," covered by the warranty program, we remanded the matter for explanation. We also expressed *280 our concern with the Commissioner's somewhat cryptic rejection of the ALJ's conclusion that the arbitration award was preclusive of any claim under the warranty program. We directed that "consideration ... be given to ... whether the election of remedies provision bars claims when arbitration precedes the warranty date."
In her final decision on remand rendered on April 10, 2001, the Commissioner reaffirmed her conclusion that the Brackens claims were not covered by the warranty. As to the distinction between "incompleteness" and "defects," the Commissioner wrote:
The New Home Warranty Plan is meant to protect buyers of new homes against defects that become evident after they have a new home delivered to them by the builder that is purportedly free of defects. Such a defect is to be distinguished from an incompletion. An incompletion is something that must be properly provided before a new home can be delivered by the builder to the buyer. A roof, for example, is not deemed to be complete until it is so constructed that it will serve its intended purpose. It should be noted that N.J.A.C. 5:25-3.4(a)(1) provides that any item for the completion of which funds are being held in escrow shall be deemed to be an incompletion rather than a defect. Only if the item for which an escrow was held exhibits a defect after the release of the escrowed funds is that item included in the warranty. In this case, the record indicates, and the Appellate Division noted, that the petitioner buyers had the $20,000 balance due to the builder held in escrow due to disagreement on the condition of the house and that the money was never released to the builder.
The Commissioner reconsidered her earlier rejection of the argument that the Brackens' warranty claim was barred by the arbitration award. With respect to that issue, the Commissioner found:
that the petitioners are barred from recovering under the new home warranty because they received compensation as a result of their counterclaim and can neither relitigate matters that were included in the arbitration award nor recover twice. While it is not the case that the filing of a counterclaim for performance in a construction arbitration would, in and of itself, bar a homeowner from filing a warranty claim after taking possession if there is a punch-list or if defects are later found, the election to seek or accept an award of money to cover the cost of any necessary work, in lieu of having the builder do the work, must surely be deemed an election of remedy that would constitute such a bar under N.J.S.A. 46:3B-9, as well as under N.J.A.C. 5:25-3.4(a)1. Otherwise, the builder would be subject to remedy again that which he had already remedied pursuant to the arbitration.
As the record reveals, and the Appellate Division noted, the Brackens counterclaim specifically mentioned the "defective roof (in need of replacement due to major leakage problems)." As the Appellate Division further notes, the arbitrator's award "expressly noted that it included all claims and counterclaims submitted by the parties." In lieu of ordering the builder to complete the new home, the arbitrator awarded the petitioner buyers a credit in the amount of $20,647 against the balance due on their contract. I conclude that this credit was intended to fully compensate the buyers for all matters then at issue, including the roof, thereby resolving in advance any claim that might later be brought with regard to these matters against *281 either the builder as warrantor or the State Plan as guarantor of the warranty. By giving the buyers a cash credit that they could use to have the work done by a person of their choosing, the arbitrator provided a remedy that addressed their insistence, also quoted in the Decision, that the builder not be "involved with the completion or correction of our home."
This appeal followed. The Brackens assert that the Commissioner's distinction between "incompletions" and "defects" is ephemeral, and, in any event, should not be applied in the unique circumstances of this case, where they took possession of the house prior to the settlement. They also assert, as they did in earlier proceedings, that the arbitrator refused to accept evidence relating to the allegedly defective roof, and that the award did not cover that claim.

II.
We first consider the Brackens' attack upon the Commissioner's finding that the defective roof claim was not covered by the warranty program. Resolution of this issue requires an examination of the statutory scheme and the applicable implementing regulations.
The New Home Warranty and Builders' Registration Act, N.J.S.A. 46:3B-1 to -12, and the regulations promulgated pursuant to its authority, N.J.A.C. 5:25-1.1 to -5.5, provide for the establishment of a fund to be available for the protection of new home owners. The fund is financed by builders who are required to pay a warranty premium of .04 of one percent of the selling price of each new home that they offer for sale. See N.J.A.C. 5:25-5.4. The Bureau of Homeowner Protection administers and enforces the Act.
The Act and the implementing regulations provide a one-year warranty for any defects caused by faulty workmanship and/or defective materials due to failure to comply with established building standards, a two-year warranty for defects caused by faulty installation of plumbing, heating, cooling, and electrical systems, and a ten-year warranty for major construction defects. See N.J.S.A. 46:3B-3; N.J.A.C. 5:25-3.2. Under the program, the warranty begins on the warranty date which is defined as "the first occupation or settlement date whichever is sooner." N.J.S.A. 46:3B-2(h).
The regulations further explicate on the warranty date. They draw a distinction between situations in which the builder contracts to build a home on property owned by the builder and situations in which the builder contracts to build a home on property owned by the prospective homeowner. N.J.A.C. 5:25-3.1(a) provides:
[t]he warranty ... shall be provided by any and all new home builders for all new homes for which title is first transferred from builder to owner, or for which possession or occupancy is first given by builder to owner, on or after July 1, 1979.
N.J.A.C. 5:25-3.1(a). N.J.A.C. 5:25-3.1(b) provides:
[a] new home built for an owner shall be considered given for occupancy if the builder shall obtain and give over to the owner a certificate of occupancy issued by a local enforcing agency pursuant to the New Jersey Uniform Construction Code. A new home sold to an owner shall be considered given for occupancy when the owner is authorized to occupy pursuant to an agreement between the builder and the owner.
In this case, Princeton contracted to build a house on land owned by the Brackens. The warranty thus commenced when *282 "the builder ... obtain[ed] and [gave] over to the owner a certificate of occupancy...." Ibid. This event did not occur until Princeton and the Brackens engaged in the arbitration proceedings. Thus, the Commissioner reasoned that the Brackens' claim for the defective roof was not ripe for resolution when the Brackens initially filed their petition with the Bureau.
The Commissioner's reasoning, at least to some extent, is bolstered by N.J.A.C. 5:25-3.4(a)(1). That regulation states:
[a]ny portion of a covered home which is not completed by the warranty date [is not covered]; except that, after completion, such portions will be covered until the end of the warranty period specified for that portion, pursuant to N.J.A.C. 5:25-3.2. Builder failure to complete construction of such portions may constitute the basis for denial, supervision, or revocation of registration pursuant to N.J.A.C. 5:25-2.5. Any item for the completion of which funds are being held in escrow shall be deemed to be an incompletion rather than a defect. If such item exhibits a defect after the release of the escrowed funds, then it shall be included in the warranty. In all cases, the warranty period shall be deemed to have commenced on the warranty date.
At the time the Brackens filed their claim with the Bureau, escrow funds were being held, and it was, thus, arguable that the roof claim constituted "an incompletion rather than a defect." Although the Brackens asserted that the amount held in escrow related to other items and not the roof, the Commissioner could reasonably have concluded otherwise.
We, nevertheless, harbor reservations concerning the soundness of the Commissioner's determination. We previously noted that N.J.A.C. 5:25-3.4(a)(1) bolstered the Commissioner's conclusion that the roof claim pertained to an "incompletion," and not a defect, because money was being held "in escrow" for the item. However, other portions of the regulation seem to support the Brackens' assertion that the claim was cognizable under the new home warranty. By the time the case reached the ALJ and the Commissioner for final resolution of the issues, the escrow funds had been disbursed by order of the arbitrator. N.J.A.C. 5:25-3.4(a) states specifically that "[i]f [the] item [subject to the escrow fund] exhibits a defect after the release of the escrowed funds, then it shall be included in the warranty." Even if the defective roof claim was not ripe for resolution when the Brackens' claim was filed, it is arguable that it was cognizable at the time of the Commissioner's ultimate decision. In a similar vein, even if the roof was not "completed by the warranty date" because the settlement had not occurred and the certificate of occupancy had not been "give[n] over to the owner," N.J.A.C. 5:25-3.1(b), that problem no longer existed after the arbitration. The arbitrator's award required Princeton to "forward to the Brackens [the] original certificate of occupancy." Thus, by the time the case was heard by the ALJ and decided by the Commissioner, it appears that the roof, as constructed, constituted a "defect[ive]" item subject to warranty coverage.

III.
We nevertheless discern no sound basis to disturb the Commissioner's decision that the Brackens' claims were barred by the statutory election remedies provision. N.J.S.A. 46:3B-9 provides:
Nothing contained herein shall affect other rights and remedies available to the owner. The owner shall have the opportunity to pursue any remedy legally available to the owner. However, initiation of procedures to enforce a remedy shall constitute an election *283 which shall bar the owner from all other remedies. Nothing contained herein shall be deemed to limit the owner's right of appeal as applicable to the remedy elected.
This section states that an election takes place upon "initiation of procedures to enforce a remedy," and that such an election "bar[s] the owner from all other remedies."
Read literally, the statute seems to say that an election is binding when the owner "initiate[s] procedures to enforce a remedy" even if the procedure selected is aborted without any consideration of the merits of the dispute. So posited, it is arguable that arbitration of the Brackens' counterclaim concerning the roof was barred because, chronologically, the Brackens first filed their new home warranty petition with the Bureau. Conversely, it is also arguable that the Brackens' new home warranty petition was precluded once they filed their counterclaim with the arbitrator, even if the arbitrator never considered the defective roof claim on the merits. We need not address those issues.
We find substantial evidence in the record supporting the Commissioner's factual finding that the arbitrator accepted evidence on the Brackens' defective roof claim and resolved that issue on the merits. In our earlier opinion, we expressed concern about the possibility that the arbitrator refused to consider the Brackens' counterclaim. We expected that the Commissioner would conduct a hearing, accept evidence, and resolve that issue. Unfortunately, that was not the case.
During the pendency of this appeal, however, we granted the Brackens' motion to supplement the record. We recount the relevant facts. Counsel for the Brackens wrote to the arbitrator advising him of their position that he had refused to accept evidence respecting the defective roof claim and that he did not resolve the issue on the merits. Accompanying counsel's letter was a proposed certification the Brackens asked the arbitrator to sign. Among other items, the proposed certification stated that the arbitrator had declined to "accept a binder document ... that substantiated the counterclaim amount and defects in the roof construction," that "[n]one of [the] amount [awarded] pertained to the roof," and that he expected that the Brackens would obtain "redress regarding the roof" under the new home warranty program.
The arbitrator returned the proposed certification unsigned. In his accompanying letter, the arbitrator recalled "accept[ing] various documents from [the Brackens] regarding their roof claim." He also recalled "the parties presenting mockups of the roof during the [arbitration] hearing as well as other evidence [and] related documents." Although the arbitrator refused to "clarify" the award, it is abundantly plain that his recollection of the arbitration proceedings was markedly different from that of the Brackens.
The record, as supplemented, strongly confirms the Commissioner's finding that the Brackens' claim was considered and rejected by the arbitrator. This comports with the arbitrator's statement in his decision that the award was "in full settlement of all claims and counterclaims submitted [in the] arbitration [proceeding]." We affirm on this basis.
Affirmed.